**Roseanne BELL, an individual, d/b/a Bell & Company, Appellee,**

v.

**Chuck TOLLEFSEN, an individual, d/b/a Cotton/HMS, HMS Computer Systems, Inc., a corporation, and Clyde B. Self, an individual, and Exley Incor-**

porated, an Oklahoma Corporation, d/b/a Cotton Bank Information Services, Inc., Appellants.

No. 71971.

Supreme Court of Oklahoma.

Nov. 14, 1989.

Joseph A. McCormick, D. Kevin Ikenberry, Tulsa, for appellants.

Mack Muratet Braly, Tulsa, for appellee.

KAUGER, Justice.

Executive Center Co. and HMS Computer Systems, Inc.[1] negotiated a lease which provided:

"...Tenant's suite shall be constructed per floorplan drawings and finish schedule as approved by both Tenant and Landlord at Landlord's sole cost up to a total of $16.00 per usable square foot of leased area. Tenant and Land- (sic) Landlord shall mutually agree to any excess costs and method of payment thereof prior to commencement of construction of Tenant's suite...."

The question presented is whether this lease created an agency relationship subjecting the landlord's property to a mechanic's and materialmen's lien for improvements and services furnished to the tenant under the terms of a contract between the tenant and an interior decorator. We find that unless an agency relationship existed, the landlord's property interest is not subject to a mechanic's and materialman's lien for improvements and services provided to a tenant under the contract between the tenant and an interior decorator. We also find that there were material questions of fact concerning whether previous construction costs had exhausted the amount which the landlord had contracted to pay for renovation of the tenant's space, and whether there had been an agreement between the tenant and the landlord that the landlord would pay in excess of $16.00 per square foot to finish the tenant's suite. Therefore, the trial court erred in entering summary judgment.

## FACTS

On September 1, 1985, Chuck Tollefsen (Tollefsen/tenant), president of HMS Computer Systems, Inc. (HMS Computer), leased office space in a building owned by a partnership, Executive Center Company (Executive Center/landlord). On July 30, 1985, Tollefsen contracted with the appellee, Roseanne Bell (Bell/decorator), to provide interior decorating and other services on the leased property. On January 6, 1986, after Tollefsen had failed to pay Bell for her services, she filed a mechanic's and materialman's lien pursuant to 42 O.S.1981 § 141[2] in the amount of $7,886.62. The lien statement described Clyde B. Self (Self), a general partner of Executive Center, as the owner of the property.[3] An action to foreclose the mechanic's and materialman's lien was originally filed on February 25, 1986, naming Tollefsen and HMS Computer as defendants. The petition was amended on September 2, 1986, naming Self as an additional defendant. The petition was amended again on October 24, 1986, to add another defendant, Exley, Inc. (Exley), an entity owned by Tollefsen. On May 8, 1987, Bell obtained a consent judgment against HMS Computer and Exley for $7,886.62, plus costs and attorneys' fees in the amount of $8,205.77.

On April 13, 1988, Bell filed a motion for summary judgment against Self as owner of the premises. Bell alleged that the lease provision obligated Self to pay for the decorating services. The objection to Bell's motion showed that Executive Center, and not Self, owned the office space leased to Tollefsen. The project manager's affidavit stated that he was hired by Executive Center, and that the entire amount of $16.00 per square foot had been paid for renovation. (However, the affidavit does not reflect whether the fund was exhausted before or after the decorator's services were provided.) Self also presented the trial court with Bell's deposition testimony stat-

---

1. Clyde Self, general partner, signed for Executive Center Co. and Chuck Tollefsen, President, signed for HMS Computer Systems, Inc.

2. Title 42 O.S.1981 § 141 provides in pertinent part:
   "... If the title to the land is not in the person with whom such contract was made, the lien shall be allowed on the buildings and improvements on such land separately from the real estate...."

3. The lien statement originally described the location of the property as lot *two* (2), block one (1), Executive Center Amended, an addition of the City of Tulsa, Tulsa County, State of Oklahoma. On April 11, 1938, Bell amended the lien to correctly describe the property as lot *one* (1), block 1, Executive Center Amended, an addition to the City of Tulsa, County of Tulsa, State of Oklahoma.

ing that: 1) she knew that the office space was leased; 2) no contract for services existed with the landlord for the services performed; and 3) she had looked solely to Tollefsen for payment of the contracted services.

Bell filed a motion for leave to amend and a motion to substitute parties on May 10, 1988. On July 15, 1988, the district court entered a minute order granting Bell's motion for summary judgment and substituting Executive Center for Self as a party defendant. On July 25, 1988, Self filed a motion for rehearing. On the same day, Bell filed the third amended petition naming Executive Center as the owner of the leased premises. Self and Executive Center filed a motion to dismiss the third amended petition on August 4, 1988. On September 29, 1988, the district court denied Self and Executive Center's motion for rehearing and their motion to dismiss. The court also entered a journal entry of judgment finding that Executive Center had promised to pay for Bell's services. Bell was awarded $18,016.65, and Self and Executive Center appealed on October 28, 1988.

UNLESS AN AGENCY RELATIONSHIP EXISTS, A LANDLORD'S PROPERTY INTEREST IS NOT SUBJECT TO A MECHANIC'S AND MATERIALMAN'S LIEN FOR IMPROVEMENTS AND SERVICES PROVIDED TO A TENANT UNDER A CONTRACT BETWEEN THE TENANT AND THE MECHANIC OR MATERIALMAN.

Bell argues that she is entitled to enforce the mechanic's lien for labor and services rendered to Tollefsen against Executive Center's fee interest because the lease expressly authorized the improvements and obligated the landlord to reimburse the tenant for such costs.[4] Self argues that the terms of the lease were insufficient to make Tollefsen an agent of Executive Center. Bell acknowledges that Self was not a party to the contract for improvements to the leased premises. Therefore, in order to prevail, she must establish that Tollefsen acted as Self's agent when the contract was entered.

■■■ Generally, if a tenant is not an agent of the landlord, a mechanic's lien extends only to the improvements and to the leasehold estate.[5] We acknowledged in *Dieterle Plumbing & Heating v. Green*, 605 P.2d 1335, 1337 (Okla.1980), that a landlord's interest may be subject to a lien: 1) if an agency relationship exists between the landlord and tenant or; 2) if the renovations resulted in the erection of a new building. A mechanic's lien secures payment of a debt.[6] The right to a materialman's or mechanic's lien depends upon contract.[7] In order for the lien to be enforceable, the contract must be made by the owner or an authorized agent.[8] A tenant does not become the agent of the landlord merely because of the landlord-tenant relationship.[9]

4. In support of this assertion, Bell relies on *Deka Dev. Co. v. Fox*, 170 Okla. 228, 39 P.2d 143, 148 (1934). Neither the facts nor the holding support this position. In *Deka*, the tenant was required to make certain improvements which he would be reimbursed for if the property were sold during the lease period. However, if the property were not sold, no reimbursement would be made. The Court found that this type of option in the lease provision did not establish an agency relationship between the lessor and lessee.

5. *Dieterle Plumbing and Heating v. Green*, 605 P.2d 1335–36 (Okla.1980); *Whitfield v. Frensley Bros. Lumber Co.*, 141 Okla. 44, 283 P. 985, 990 (1930). See also, Comment, "Creditors' Rights: The Constitutionality of Oklahoma's Mechanics' Lien Law," 31 Okla.L.Rev. 148, 155 (1978).

6. *Metropolitan Water Co. v. Hild*, 415 P.2d 970, 973 (Okla.1966).

7. *Benton v. Hill*, 389 P.2d 501–02 (Okla.1964).

8. *Statser v. Chickasaw Lumber Co.*, 327 P.2d 686, 689 (Okla.1958); *Berry v. Barbour*, 279 P.2d 335, 337 (Okla.1954). See also, Dawson, "The Self–Serving Intermeddler," 87 Harv.L.Rev. 1409, 1454 (1974).

9. *Rowen & Blair Elec. Co. v. Flushing Operating Corp.*, 399 Mich. 593, 250 N.W.2d 481, 484 (1977); *Idaho Lumber, Inc. v. Buck*, 109 Idaho 737, 710 P.2d 647, 651 (Ct.App.1985); Annot., "Lessee as Agent of Lessor within Comtemplation of Mechanic's Lien Laws," 163 A.L.R. 992 (1946). See also, S. Phillips, *A Treatise on the Law of Mechanics' Liens & Personal Property*, 151, 160, § 90 (Little, Brown, & Co. 1883).

■ There is a split of authority concerning whether a landlord's contribution towards improvements by a tenant is sufficient to constitute an agency relationship thus impressing a mechanic's or materialman's lien against the landlord's interest,[10] or whether such provisions merely justify a lien against the tenant's interest.[11] Although this narrow issue is one of first impression in Oklahoma, our decision in *Carter v. Simpson*, 302 P.2d 980, 982 (Okla.1956), aligned Oklahoma with those jurisdictions which hold that a landlord/lessor's interest in real property is not subject to a mechanic's lien claim merely because the landlord agrees to contribute to improvements to the leasehold estate absent other evidence of an agency relationship.

The Michigan Supreme Court has addressed a very similar factual situation. In *Rowen & Blair Elec. Co. v. Flushing Operating Corp.*, 399 Mich. 593, 250 N.W.2d 481, 485 (1977), the landlord had agreed to contribute $45,000.00 for improvements necessary to adapt the leased premises for use as a bakery. The materialman contracted with and expected the tenant to pay for the furnished electrical and millwright services. The landlord spent the entire amount promised for improvements before a lien was filed against the leased premises. The Michigan court held that the tenant neither encumbered the landlord's interest nor bound the landlord beyond the express limits of its authority. Likewise, Tollefsen's contract with Executive Center providing for a $16.00 per square foot improvement allowance will not support a lien against the landlord's interest unless: 1) either the landlord failed to spend the $16.00 per square foot allowance prior to these improvements or, 2) the landlord and tenant agreed that the landlord would pay the excess costs.

The provision for an improvement allowance placed Executive Center in a situation analogous to that of the landlord in *Carter*. There, we held that a lease which provided that the landlord would let space for a reduced rental rate if the tenant painted the leased premises, did not create an agency relationship. The landlord in *Carter* induced its tenant to enter a lease by providing a reduced rental rate in exchange for the painting. Executive Center accomplished the same thing by providing Tollefsen with an improvement allowance. Both Executive Center and the landlord in *Carter* provided a financial incentive for the tenant to enter the lease.

■ Agency is generally a question of fact to be determined by the trier of fact.[12] Nevertheless, if the question depends upon construction of an undisputed, unambiguous written lease, the question is one of

**10.** *Lentz Plumbing Co. v. Fee,* 235 Kan. 266, 679 P.2d 736, 743 (1984) (Owner renting property to lessee and providing that owner will pay for lessee's improvements subjects owner's interest to mechanics' lien.); *Stroh Corp. v. K & S Dev. Corp.,* 247 N.W.2d 750, 752 (Iowa 1976) (Lease requiring construction for which lessor agreed to reimburse lessee subjected lessor's interest to mechanics' lien. See *Ringland–Johnson–Crowley Co. v. First Cent. Serv. Co.,* infra); *Wildwood Amusement Co. v. Stout Lumber Co.,* 178 Ark. 977, 12 S.W.2d 911–12 (1929) (The court found that the tenant was required by the lease to make the improvements); *Reed v. Estes,* 113 Tenn. 200, 80 S.W. 1086 (1904); *Kremer v. Walton,* 16 Wash. 139, 47 P. 238 (1896) (Turned on requirement to erect building. See, *Seattle Ass'n v. Daniels,* supra.); *M.F. Hickey Co. v. Imperial Realty Co.,* 73 Misc.2d 498, 342 N.Y. S.2d 186, 188 (1972) (Among other factors, contribution by lessor toward lessee's building costs supported imposition of mechanics' lien against lessor's interest.).

**11.** *Ringland–Johnson–Crowley Co. v. First Cent. Serv. Corp.,* 255 N.W.2d 149, 152–53 (Iowa, 1977); *Rowen & Blair Elec. Co. v. Flushing Operating Corp.,* see note 9, supra; *Kingsport Brick Corp. v. Bostwick,* 145 Tenn. 19, 235 S.W. 70, 79 (1921); *Uni–Build Corp. v. Colorado Seminary,* 650 P.2d 1300, 1302 (Colo.Ct.App.1982); *Messina Bros. Constr. Co. v. Williford,* 630 S.W.2d 201, 208 (Mo.App.1982). The following cases have found that lease provisions providing for reduced or abated rental is insufficient to hold the lessor's interest subject to a mechanics' lien. *Carter v. Simpson,* 302 P.2d 980, 982 (Okla. 1956); *Seattle Ass'n v. Daniels,* 15 Wash.2d 393, 130 P.2d 892, 894 (1942); *Rio Grande Lumber & Fuel Co. v. Buergo,* 41 N.M. 624, 73 P.2d 312, 315, 123 A.L.R. 1, 3 (1937); *Langley v. D'Audigne,* 31 App.D.C. 409, 415 (1908).

**12.** *Paul Hellman, Inc. v. Reed,* 366 P.2d 391, 393 (Okla.1961); *Magnolia Petroleum Co. v. Angelly,* 306 P.2d 309, 315 (Okla.1955).

law for the court.[13] In a determination of an agency relationship between a landlord and tenant, the intent to form such a relationship is gathered from the lease instrument.[14] Although the written lease is undisputed and unambiguous, fact questions remain concerning whether the construction and finish allowance was spent prior to the agreement with Bell and whether an additional agreement to pay the interior design costs was entered into between the tenant and landlord.

## CONCLUSION

The burden of proving agency rests on the party asserting it.[15] The lease provision is facially insufficient to establish an agency relationship between the landlord and tenant. The landlord's interest cannot be impressed with a mechanic's and materialman's lien unless: 1) the $16.00 construction and finish allowances mentioned in the lease were not spent before the improvements were made, or 2) the parties negotiated an additional agreement for the payment of the interior design costs. These are questions of fact which must be determined. The entry of summary judgment was premature.[16]

REVERSED AND REMANDED

HARGRAVE, C.J., and HODGES, LAVENDER, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

SIMMS, J., concurs in result.

OPALA, V.C.J., concurs in part, dissents in part.

---

**13.** *Hayes v. Charter Oak Fire Ins.*, 193 Okla. 617, 145 P.2d 941–42 (1944); *Dauel v. Rose*, 123 Okla. 51, 251 P. 1000–01 (1926); See also, *Idaho Lumber, Inc. v. Buck*, see note 9, supra.

**14.** *Messina Bros. Constr. Co. v. Williford*, see note 11 at 207, supra; *Newport v. Hedges*, 358 S.W.2d 441, 445 (Mo.App.1962).

**15.** *Banning Transp., Inc. v. Vansickle*, 527 P.2d 586, 588 (Okla.1974); *Agee v. Gant*, 412 P.2d 155, 160 (Okla.1966); *Sturm v. Green*, 398 P.2d 799, 804 (Okla.1965).

**16.** *Buckner v. General Motors Corp.*, 760 P.2d 803, 812 (Okla.1988).